IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ANTONIO DEAN WALKER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:19cv00743 |
| | ) | |
| v. | ) | __MEMORANDUM OPINION__ |
| | ) | |
| HAROLD CLARKE, *et al.,* | ) | By:  Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendants. | ) | |

Antonio Dean Walker, a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983, alleging excessive force, bystander liability, due process, and supervisory liability claims. The defendants have moved to dismiss the supervisory liability, one due process, and the official capacity damages claims. Having reviewed the pleadings, the court will grant defendants' motion to dismiss and set the remaining claims for a jury trial.

## I.

In his second amended complaint,[1] Walker alleges that on October 5, 2019, he was "attacked" by two other inmates and fought back to "defend" himself. During the altercation,

---

[1] The court granted Walker's motion to file a second amended complaint and directed defendants to respond to it. (*See* ECF No. 34.) Attached to their motion to dismiss, defendants provide a copy of the second amended complaint that they received from Walker. (*See* ECF No. 37-1.) That copy is different from the copy the court received. (*Compare* ECF Nos. 33 and 37-1.) Having reviewed the two versions of the second amended complaint, it appears the copy that the defendants received includes all of the facts and claims presented in the court's copy but also includes additional facts and claims. Based on the missing numbered paragraphs in the court's copy of the second amended complaint (ECF No. 33), it appears Walker intended the defendants' copy (ECF No. 37-1) to be his complete second amended complaint. Accordingly, the court will consider the defendants' copy (ECF No. 37-1) in adjudicating the motion to dismiss.

The court notes that it previously denied Walker's motion seeking preliminary injunctive relief. (*See* ECF Nos. 46 and 47.) In adjudicating that motion, the court reviewed the copy of the second amended complaint that Walker had filed with the court (ECF No. 34) and determined that the allegations in the motion seeking preliminary injunctive relief were not related to the claims in the underlying action and, further, that Walker had not demonstrated that he was likely to suffer actual and imminent irreparable harm in the absence of preliminary relief. (*See* ECF No. 46.) While the facts in the motion did not relate to the facts in the court's

an unknown officer "shot" Walker with a "gun"[2] and Sgt. Massingill pepper sprayed Walker in his eyes. Walker states that after he was pepper sprayed, he could not see, he "ceased fighting," and he laid down on the floor. He claims that while he was lying on the floor, defendant K9 Officer McReynolds "ordered" his dog to bite Walker on Walker's left leg. Walker states that when the dog bit him, he "instinctively had to strike the dog to release [his] leg." Walker argues that Sgt. Massingill failed to protect him from the harm and failed to instruct Officer McReynolds to move his dog away from Walker.

Walker claims that after he was restrained and handcuffed, Officer McReynolds again "ordered" his dog to bite Walker on his left leg and thigh. The dog bites resulted in "several open wounds that had to be stitched closed at a hospital."

Approximately one hour and thirty minutes later, while Walker was still at the hospital, Sgt. Massingill filed a disciplinary offense report against Walker, charging him with aggravated assault upon a non-offender.[3] Walker alleges that Sgt. Massingill "fabricated" the report by

---

copy of Walker's second amended complaint, the court notes that several of the facts *are* alleged in the defendants' copy of Walker's second amended complaint. However, even upon considering Walker's motion seeking preliminary injunctive relief as it relates to the defendants' copy of the second amended complaint (ECF No. 37-1), Walker has not established the requisite relationship between the injury claimed in the motion and the conduct giving rise to the complaint. Although the facts about being pressured to withdraw his informal complaint through denial of showers and laundry items are in the defendants' copy of Walker's second amended complaint, none of his claims in this action substantively relate to these allegations. Moreover, Walker does not allege that any of the defendants were involved in denying him showers or laundry items, or in pressuring him to withdraw his informal complaint. Finally, even if the claims in the motion were related to his complaint, Walker nevertheless fails to demonstrate that he is likely to suffer actual and imminent irreparable harm in the absence of the preliminary injunction. Accordingly, even considering the defendants' copy of the second amended complaint, Walker's motion seeking preliminary injunctive relief is denied.

[2] Although Walker does not specify, the court assumes, based on its general knowledge of security procedures within prisons, that this was a gun with rubber bullets. In any event, this allegation is not an issue in any of the claims of this case.

[3] At the same time, Sgt. Massingill also filed two other disciplinary offense reports against Walker, charging him with disobeying an order and fighting with any other person; however, those reports and charges are not at issue in this action.

claiming that Walker assaulted Officer McReynolds by kicking him in the knee.[4] Walker received the disciplinary offense report on October 6, 2019 and requested witnesses and documentary evidence for his disciplinary hearing.

On October 13, 2019, Walker filed an informal complaint to defendant Warden Kiser and/or the Assistant Warden, describing the alleged excessive force used against him.[5] Walker argues that Warden Kiser failed to "remedy the wrong" acts of Officer McReynolds.

On October 24, 2019, Walker attended a disciplinary hearing on the aggravated assault disciplinary charge. Walker claims that Sgt. Massingill falsely testified at the hearing,[6] and that defendant Disciplinary Hearing Officer ("DHO") Mullins "refused to allow" Walker to present his witness and documentary evidence to support his defense. Walker was found guilty of the disciplinary offense and a penalty of a $15 fine was imposed.

Walker states that he filed an informal complaint to Warden Kiser concerning the allegedly false disciplinary offense report and testimony, and that Warden Kiser "failed to act to remedy [the] wrong[s] by failing to overturn the false charge on appeal." He also states that

---

[4] The disciplinary offense report states that Walker "was involved in a a[] physical altercation with two other offenders. During the altercation[,] K9 Officer McReynolds deployed his assigned Canine in order to compel the offenders to comply with orders to stop fighting. Offender Walker turned and kicked K9 Officer McReynolds in the knee area and attempted to kick K9 Officer McReynolds a second time. Offender Walker assaulted and continued to assault K9 Officer McReynolds during the physical altercation and therefore is charged per O[perating] P[rocedure] 861.1."

[5] Walker alleges he was subsequently pressured to withdraw the informal complaint through threats and denial of certain privileges. However, he does not name any of the people who allegedly pressured him as defendants to this action. Moreover, inmates do not have a constitutional right to participate in grievance proceedings, see Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994), and defendants do not raise failure to exhaust administrative remedies as a defense to this action. Accordingly, the withdrawal of his informal complaint is not at issue in this action.

[6] According to the disciplinary offense report, Sgt. Massingill testified that Walker "was involved in a physical altercation with two offenders and that K9 Officer McReynolds engaged his canine 'Rusty' on offender Walker to break up the fight. Offender Walker struck 'Rusty' and then kicked Officer McReynolds in the area of his knee and attempted to kick the officer again before turning back to the offenders. . . . Walker continued to kick backwards toward Officer McReynolds until OC was used and the offender stopped."

he sent "complaints" to defendants Director Clarke and Chief of Corrections Operations ('COO") Robinson to "inform" them of the alleged excessive force and false disciplinary offense report and testimony, and they "failed to act to remedy the wrong[s] by failing to transfer [Walker] from… Red Onion State Prison and the Western Region."

Walker raises the following claims:

1. Officer McReynolds used excessive force against Walker by ordering his dog to bite Walker when he was lying on the ground and not fighting;

2. Sgt. Massingill was liable as a bystander because he failed to protect Walker from the alleged excessive force;

3. Sgt. Massingill denied Walker due process by writing a false disciplinary offense report and giving false testimony at the subsequent disciplinary hearing;

4. DHO Mullins denied Walker due process at the disciplinary hearing by accepting Sgt. Massingill's "false" testimony and denying Walker the opportunity to present witnesses and documentary evidence;

5. Warden Kiser denied Walker due process by failing to overturn the disciplinary conviction on appeal despite knowing it was based on false evidence; and

6. Warden Kiser, Director Clarke, and COO Robinson are liable as supervisors because they knew, after the fact, that others had violated Walker's rights and failed to take corrective action.

As relief, Walker seeks a declaration that his rights were violated, an injunction compelling the defendants to dismiss "and erase" the false disciplinary conviction, a reduction in his security level, immediate transfer to a lower security facility, and $10 million in punitive and compensatory damages.

The defendants filed a partial motion to dismiss the supervisory liability claims against defendants Warden Kiser, Director Clarke, and COO Robinson; the due process claim against Sgt. Massingill; and the official capacity damages claims against all defendants.

## II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

In order to allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999).

### III.

Walker alleges that Warden Kiser, Director Clarke, and COO Robinson are liable for the alleged excessive force and due process violations because they are supervisors. The court finds that Walker's allegations do not state a viable claim against these defendants and, therefore, will grant defendants' motion to dismiss these claims.

In order to set forth a claim for supervisory liability under § 1983, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"[;] and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). "As to the first element, '[e]stablishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury.'" *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw*, 13 F.3d at 799) (alteration in

original). "As to the second element, a plaintiff 'may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses.'" *Id.* (quoting *Shaw*, 13 F.3d at 799). "Finally, as to the third element, 'proof of causation may be direct . . . or may be supplied by the tort principle that holds a person liable for the natural consequences of his actions.'" *Id.* at 226–27 (quoting *Shaw*, 13 F.3d at 799).

"The plaintiff . . . assumes a heavy burden of proof in supervisory liability cases," because "[h]e must not only demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" *Slakan v. Porter*, 737 F.3d 368, 372 (4th Cir. 1984) (quoting *Orpiano v. Johnson*, 632 F.2d 1096, 1101 (4th Cir. 1980)) (alteration in original). "[H]e cannot satisfy his burden of proof by pointing to a single incident or isolated incidents, . . . [n]or can [a supervisor] reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." *Id.* Moreover, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Walker has failed to allege sufficient facts to support a claim of supervisory liability against these officials. Walker alleges he complained to these defendants—after the fact—about the actions of other defendants. But Walker does not allege widespread conduct that posed an unreasonable risk of harm. Further, Walker does not allege the existence of "documented widespread abuses," followed by continuing supervisory inaction. Finally, Walker does not allege facts from which it could be determined that his alleged constitutional injury was caused by these defendants' inaction. *See Jones v. Wellham*, 104 F.3d 620, 627 (4th

Cir. 1997) (the causation requirement in a supervisory liability conduct "is a stringent one," requiring proof that the challenged action was "'the moving force' behind the ultimate violation.") Because Walker has failed to allege sufficient facts to support a claim of supervisory liability, the court will grant defendants' motion to dismiss the supervisory liability claims against Warden Kiser, Director Clarke, and COO Robinson.[7]

## IV.

Walker alleges that Sgt. Massingill denied him due process when Sgt. Massingill wrote a false disciplinary offense report against him and provided false testimony at his disciplinary hearing. These allegations, however, are insufficient to constitute a cognizable constitutional claim. Although "[t]he filing of a false misbehavior report may be actionable if made in retaliation for an inmate's exercise of his constitutional rights," if the plaintiff "does not allege that the defendants' conduct was a retaliatory response," then allegations of "false misbehavior reports and false testimony" fail to implicate a constitutionally protected interest. *Thomas v. Calero*, 824 F. Supp. 2d 488, 499 (S.D.N.Y. 2011); *see Cole v. Holloway*, 631 F. App'x 185, 186

---

[7] To the extent Walker claims these defendants are liable for their responses to grievances and/or complaints or their failure to investigate grievances and/or complaints, these allegations also fail to state a claim. "Ruling against a prisoner on an administrative complaint does not cause or contribute to [a constitutional] violation," *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007), and inmates do not have a constitutionally protected right to access the grievance procedure, *see, e.g.*, *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Accordingly, Warden Kiser, Director Clarke, and COO Robinson are not liable under § 1983 for their responses to Walker's grievances and/or complaints. *See Brown v. Va. Dep't Corr.*, No. 6:07cv33, 2015 U.S. Dist. LEXIS 12227, at *8, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009); *see also Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (holding allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the alleged underlying deprivation). Further, a claim that a defendant failed to adequately investigate an incident also is not cognizable under § 1983. *See Charles v. Nance*, 186 F. App'x 494, 495 (5th Cir. 2006) (holding that alleged failure to investigate a grievance "fails to assert a due process violation"); *Sweat v. Rennick*, No. 9:11-2908, 2012 U.S. Dist. LEXIS 55200, at *5, 2012 WL 1358721, at *2 (D.S.C. Feb. 7, 2012) ("Plaintiff's complaint that this Defendant has not properly investigated his claims . . . fails to set forth a claim for a violation of a constitutional right."); *Lewis v. Williams*, Nos. 05-13, 05-51, 05-52, 2006 U.S. Dist. LEXIS 8444, at *18-19, 2006 WL 538546, at *7 (D. Del. Mar. 6, 2006) ("[T]he failure to investigate a grievance does not raise a constitutional issue.").

(4th Cir. 2016) (acknowledging "the general legal proposition that a false disciplinary charge cannot serve as the basis for a constitutional claim," absent allegations of retaliation or arbitrary punishment); *see also Mitchell v. Senkowski*, 158 F. App'x 346, 349 (2d Cir. 2005) ("The . . . provision of false testimony against an inmate by corrections officers . . . violates due process only where either procedural protections were denied that would have allowed the inmate to expose the falsity of the evidence against him . . . or where the fabrication of evidence was motivated by a desire to retaliate for the inmate's exercise of his substantive constitutional rights."); *Chapman v. Bacon*, No. 3:14cv641, 2017 U.S. Dist. LEXIS 19539, at *31, 2017 WL 559703, at *11 (E.D. Va. Feb. 10, 2017) (citing cases).

Walker alleges that within an hour and half of the altercation, Sgt. Massingill wrote a disciplinary offense report against him that contained allegations that Walker claims are false. Walker does not allege that the disciplinary offense report was at all motivated by or in retaliation for the filing of complaints or grievances (which Walker had not yet submitted), or in response to any other constitutionally protected activity. Nor does Walker allege that Sgt. Massingill gave allegedly false testimony at his disciplinary hearing to retaliate against Walker. Accordingly, Walker's claim against Sgt. Massingill relating to the allegedly false disciplinary offense report and false testimony do not rise to the level of a constitutional violation. *See Delk v. Moran*, No. 7:16cv554, 2019 U.S. Dist. LEXIS 49950, at *39-40, 2019 WL 1370880, at *14 (W.D. Va. Mar. 26, 2019) ("[T]he mere filing of [a false] charge itself does not constitute a cognizable claim under § 1983 if the inmate was granted a hearing, and had the opportunity to rebut the unfounded or false charges." (internal quotations omitted) (second alteration in original)). Accordingly, the court will grant defendants' motion to dismiss the due process claim against Sgt. Massingill.

## V.

Finally, to the extent Walker brings this action against the defendants in their official capacity for monetary damages, such relief is not available via § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Therefore, the court will grant defendants' motion to dismiss Walker's claims for monetary damages against defendants in their official capacities.

## VI.

For the reasons stated, the court will grant defendants' partial motion to dismiss. Accordingly, only Walker's excessive force claim against Officer McReynolds, bystander liability claim against Sgt. Massingill, and due process claims against DHO Mullins and Warden Kiser remain.  The court will set those claims for trial.

**ENTERED** this 15th day of December, 2020.

　　　　　　　　　　　　　　　　　　　 */s/ Thomas T. Cullen*　　　　　　　　
　　　　　　　　　　　　　　　　　　HON. THOMAS T. CULLEN
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE