IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ANTONIO WALKER, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:19cv743 |
| | ) | |
| v. | ) | |
| | ) | |
| JEFFREY B. KISER, ET AL., | ) | By: Robert S. Ballou |
|     Defendants. | ) | United States Magistrate Judge |

### MEMORANDUM OPINION[1]

A prisoner must exhaust available administrative remedies before bringing a federal action regarding prison conditions unless the remedies are unavailable because prison officials thwarted the process through intimidation. 42 U.S.C. § 1997e; Ross v. Blake, 578 U.S. 632, 648 (2016). Plaintiff, Antonio Walker, brought this action alleging claims against several officials at Red Onion State Prison for excessive force, failure to protect, and violation of his due process rights. Walker did not exhaust his administrative remedies before filing suit because threats and intimidation by prison officials caused him to withdraw his Informal Complaint. Thus, I find that the administrative process at Red Onion was unavailable to Walker and **DENY** Defendants' motion for summary judgment (Dkt. 82) claiming that Walker failed to exhaust his administrative remedies.

### I.  BACKGROUND[2]

Walker's claims under § 1983 arise from an incident at Red Onion which occurred on October 5, 2019 when two inmates attacked him.[3]  Walker fought back against the attack to

---

[1] This case is before me by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).
[2] The facts are drawn from the record established through Defendants' motion for summary judgment and the testimony at the evidentiary hearing on the exhaustion issue.
[3] The facts of Walker's claims are more fully set forth in Judge Cullen's memorandum opinion dated December 15, 2020. Dkt. 48.

protect himself, and in the altercation that followed, he claims that he was "shot" and pepper sprayed by prison guards and bitten by a dog under the control of K9 Officer McReynolds. He was taken to Norton Community Hospital where his wounds were cleaned and partially stitched to prevent infection. The medical staff told Walker that to avoid infection he should keep his wounds clean until healed. The hospital discharge instructions directed Walker to clean his wounds with soap twice a day and pat them dry with a clean towel.

     Walker returned to Red Onion and was placed in a medical unit where he received medication for pain and antibiotics to reduce the risk of infection. He did not have access to his personal property including soap and other hygiene products, clean clothes or writing materials. On October 8, 2019, a doctor cleaned his wounds, changed his bandages, and told him to wash and clean his wounds daily with soap and water. Later that day, Walker was transferred to a solitary housing unit and placed in a cell without access to clean laundry, hygiene products, personal belongings, or any medical products he needed to clean his wounds.

     Walker continued to ask to shower and for clean laundry, hygiene products (e.g., soap and towels), personal belongings, and the items needed to clean his wounds. But these items were regularly denied. Walker wanted to file Informal Complaints regarding both the bite from Officer McReynolds's dog and the treatment he received in solitary confinement but claims that prison officials routinely denied his request for an Informal Complaint form. The grievance procedure at Red Onion states that "when requested, an Informal Complaint [Form] must be provided to the offender. Under no circumstances will staff deny offenders access to the Informal Complaint procedure." Finally, Walker obtained a blank Informal Complaint form and a pen from another offender, and on October 13, 2019, he filed an Informal Complaint (#ROSP-19-

INF-02003) regarding the excessive force used by correctional officers and the dog bite during the incident on October 5, 2019.

Walker continued asking correctional officers for access to a shower and clean laundry, hygiene products, personal belongings, and medical/sanitizing products needed to clean his wounds. Officers continued to deny him these essential items. Walker submitted several requests for clean laundry, and finally filed an Informal Complaint on October 28, 2019 (#ROSP-19-INF-2071) complaining that he had been in isolation and not been provided with any laundry despite two earlier requests. Walker also filed a separate Informal Complaint on October 18, 2019 (#ROSP-19-INF-02025) relating to his complaints that he had not received his personal property.

Walker contends that on October 16, 2019, Unit Manager Eric Miller and Lieutenant Garry Adams approached his cell holding the Informal Complaint charging excessive force on October 5, 2019. Walker asked how they had this Informal Complaint to which they responded with something like, "nothing could get past them" and demanded that Walker withdraw the complaint. Miller and Adams then threatened that, if Walker did not withdraw the Informal Complaint, he would not receive access to a shower, clean laundry, hygiene products, personal belongings, and medical/sanitizing products needed to clean his wounds.

Miller and Adams visited Walker at his cell on an almost daily basis for the next week threatening him that access to the supplies to clean his wounds was dependent on the withdrawal of his Informal Complaint. Undeterred, Walker sought other avenues for assistance, including pleading with Sergeant Archer for assistance obtaining his property. Indeed, Sergeant Archer helped Walker get some of his belongings, but still Walker did not have clean laundry, towels, and clothes or socks despite it being incredibly cold.

On October 20, 2019, Walker filed an Offender Request asking that prison officials preserve the video footage from the October 5, 2019 incident. He also filed an Offender Request asking for the address of the Regional Ombudsman who oversees the administrative remedies at the facility.

The next day, Walker submitted an Offender Request for a medical specialist because of numbness, throbbing, and tingling sensations in his leg. At this point, Walker had swelling around his wound(s); the stitches had been removed; he did not have access to clean clothes or towels to clean his wounds; and he was cold as he did not have warm clothes. He also complained that Red Onion did not provide him a common fare diet compliant with his religious beliefs. So, Walker started an affidavit which he finished on October 24, 2019, outlining the treatment he had received since the October 5, 2019, fight and stating that he was being forced to withdraw the Informal Complaint. Specifically, Walker stated in the affidavit

> Upon release from the hospital, I was placed in medical care for two days before being transferred to SHU in B4. I was being deprived of a shower because I was not provided with any laundry or hygiene from staff, and was not provided with my personal belongings and hygiene items until 10/18/19. I filed complaints about my property, laundry items, and the use of excessive force against me. I am currently being subjected to endure harsh treatment and I am being told/forced to withdraw my complaint on excessive force against K9 Officer McReynolds in order to receive any laundry which consists of towels, washcloths, socks, boxers, T-shirts, etc. As of today, 10/24/19, I still haven't been provided with any laundry or clean clothes until I withdraw my complaint. I am writing this affidavit on my own behalf to serve as my proof as to my circumstances and my intentions to exhaust my administrative remedies which I feel are unavailable to me as I am being forced to withdraw my complaint in order to receive my laundry from staff. I am also being served pork meals after I had made staff aware that I am on a "no pork" diet. I believe that I am being punished and retaliated against for filing a complaint against an officer. . . . In the event that my complaint (#ROSP-19-INF-02003) is lost or withdrawn by myself, it was done against my will and I am being forced to do so in order to receive my laundry items from staff.

Walker never received a response to the Informal Complaint, and he did not file a regular grievance or otherwise attempt to grieve the issue any further under the Red Onion

administrative process. Instead, on October 24, 2019, Walker withdrew the Informal Complaint, and the next day, he received the clothes he had requested for two weeks. Walker also filed a second Informal Complaint (ROSP-19-INF-02071) regarding his laundry requests, as he had still not been provided his personal laundry or towels.

Five days after withdrawing the Excessive Force Informal Complaint, Walker's mother, Teresa Walker, sent an email to Harold Clarke, Director of the Virginia Department of Corrections, explaining what had happened to Mr. Walker, that he had filed a grievance against the facility, and that he had been subjected to harsh treatment. Ms. Walker requested a full and complete investigation into the matter. (Teresa Walker Decl. ¶ 5, Ex. 1).

The evidence from the defendants presents a different picture as to Walker's attempts to exhaust his administrative remedies. Thelma Trapp, acting grievance coordinator at Red Onion, testified that the grievance procedures in Operating Procedure 866.1 provide a mechanism to put the administration on notice of potential problems that they can correct. Ms. Trapp testified that Walker withdrew his informal complaint, but acknowledged that she knew nothing as to why he withdrew the complaint. Importantly, Ms. Trapp was unaware of the allegations that Walker was denied laundry, showers, and his property.

Eric Miller, the manager of Walker's housing unit remembered Walker and that he had submitted an Informal Complaint "claiming excessive force or something." Miller also remembered Walker telling him that he was going to withdraw his complaint, but he could not remember if Walker actually withdrew it. Miller denied threatening to withhold privileges or items from Walker if he did not withdraw his Informal Complaint. Specifically, Miller testified that he cannot retaliate against inmates for using the grievance process.

Lieutenant Garry Adams was assigned to Walker's housing unit in October 2019 and oversaw daily operations, officers, and offenders on the unit. Adams had some memory of Walker,

5

but mainly just recognized his name. He confirmed that he signed as a witness to Walker withdrawing his Informal Complaint. Adams denied threatening Walker and said he would not withhold laundry or privileges from an inmate if they refused to withdraw an Informal Complaint.

Walker took no further steps after withdrawing the Informal Complaint to grieve the claim of excessive force from the fight on October 5, 2019 before filing this suit. The claims which remain pending are for excessive force against Officer McReynolds for allowing the dog to bite him, bystander liability against Sergeant Massingill for not protecting him during the fight, and denial of due process against DHO Mullins and Warden Kiser relating to the disciplinary charges lodged against Walker for fighting the other inmates. The defendants filed a motion for summary judgment seeking dismissal of the Complaint because Walker failed to exhaust his administrative remedies. I convened an evidentiary hearing to resolve any factual disputes regarding exhaustion.[4]

## II.  DISCUSSION

"The Prison Litigation Reform Act ('PLRA') requires that inmates exhaust all available administrative remedies before filing an action challenging prison conditions in federal court." *Woodhouse v. Duncan*, 741 F. App'x 177, 177 (4th Cir. 2018) (citing 42 U.S.C. § 1997e(a)(1)). This "requirement applies to all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532

---

[4] Summary judgment may be proper where there is no genuine issue of any material fact. *See* Fed.R.Civ.P. 56(a). Where factual disputes concerning exhaustion exist, however, a judge can hold an evidentiary hearing to resolve factual disputes concerning exhaustion. *See,* e.g., *Woodhouse v. Duncan*, 741 F. App'x 177, 178 (4th Cir. 2018) (noting that "[j]udges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury") (quoting *Small v. Camden Cnty.*, 728 F.3d 265, 271 (3d Cir. 2013)); *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014) (explaining judges should decide factual disputes concerning exhaustion); *Messa v. Goord*, 652 F.3d 305, 310 (2d Cir. 2011) (finding no right to a jury trial concerning PLRA exhaustion; after evidentiary hearing, court dismissed claims as unexhausted); *Drippe v. Tobelinski*, 604 F.3d 778, 785 (3d Cir. 2010) (stating that resolving whether a prisoner administratively exhausted his claims required judgment of the court); *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010) (holding "judges may resolve factual disputes concerning exhaustion" through an evidentiary hearing on material factual disputes if necessary); *Bryant v. Rich*, 530 F.3d 1368, 1375–77 & n. 15 (11th Cir. 2008) (holding court may decide factual disputes concerning PLRA exhaustion and finding no right to a jury trial on the issue); *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008) (setting forth a framework for cases where parties contest PLRA exhaustion that requires the court to hold a hearing and decide the issue). *See also Bowling v. Clarke*, 2020 WL 4340944, *4, n.3 (W.D. Va. July 28, 2020)

(2002), and federal courts do not have discretion to waive it or to excuse a plaintiff's failure to exhaust administrative remedies that were otherwise available to him. *Ross*, 578 U.S. at 638–42. The PLRA also "'requires proper exhaustion,' which 'means using all steps that the agency holds out, and doing so properly,' to allow the agency a full and fair opportunity to address the issues on the merits." *Woodhouse*, 741 F. App'x at 178 (emphasis omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90, 93 (2006)); *see also Jones v. Bock*, 549 U.S. 199, 217–18 (2007).

This "exhaustion requirement hinges on the 'availability' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross*, 578 U.S. at 642 (brackets omitted). A remedy is "available" when it is "'capable of use' to obtain 'some relief for the action complained of.'" *Id.* (quoting *Booth v. Churner*, 523 U.S. 731, 738 (2001)). Conversely, a remedy is not available when:

> (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Woodhouse*, 741 F. App'x at 178 (quoting *Ross*, 578 U.S. at 643-44). "When the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy." *Ross,* 578 U.S. at 643.

The failure to exhaust administrative remedies is an affirmative defense requiring the defendant to show that an inmate did not take advantage of an available remedy before filing suit. *See Jones*, 549 U.S. at 216; *Washington v. Rounds*, 223 F. Supp. 3d 452, 459 (D. Md. 2016). If a defendant makes this showing, the burden shifts to the plaintiff to demonstrate, by a preponderance of the evidence, that the administrative remedy was not actually "available" to him because he was prevented, "through no fault of his own, . . . from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008); *see Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011). The PLRA's express "limitation on an inmate's duty to exhaust . . . has real content," *Ross*, 578 U.S. at 642, and

7

federal courts are "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials," *Hill v. O'Brien*, 387 F. App'x 396, 400 (4th Cir. 2010) (quoting *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007)).

VDOC Operating Procedure ("OP") 866.1, Offender Grievance Procedure, is the mechanism used to resolve inmate complaints, and it applies to most aspects of prison life, but there are some exceptions, including matters beyond the control of the VDOC (such as decisions of the Virginia Parole Board, court decisions, and laws and regulations). Additionally, the grievance process may not be used to challenge disciplinary hearings or convictions.

OP 866.1 requires that, before submitting a formal grievance (also known as a "regular grievance"), the inmate must make a good faith effort to resolve the issue informally through the available institutional procedures. This is generally accomplished by submitting an informal complaint to the grievance department, which is then forwarded to the appropriate staff for investigation and response. A response to an Informal Complaint should be given within 15 calendar days.

If the informal resolution effort fails, the inmate must initiate a regular grievance which must be submitted within 30 days from the date of the incident or discovery of the incident regardless of whether the inmate has received a response to the informal complaint. Prior to reviewing the grievance, prison officials conduct an "intake" review to ensure that it meets the published criteria for acceptance. To exhaust administrative remedies, the regular grievance must be accepted for review and appealed through the highest eligible level without satisfactory resolution of the issue. Thus, if a prisoner never submits a regular grievance, or his regular grievance is never properly submitted and rejected at intake, he has not properly exhausted. There are three levels of review for an accepted regular grievance. Level I review is conducted by the head of the facility where the inmate is confined; Level II review is through the Regional

Administrator, the Health Services Director, or the Chief of Operations for Classification and Records. Finally, an appeal to Level III, if available, is the final level of review and is handled by the Chief of Corrections Operations or Director of VDOC.

It is undisputed that Walker did not exhaust his administrative remedies in accordance with OP § 866.1. He timely filed an Informal Complaint, but withdrew it before receiving a response claiming Miller and Adams intimidated him to abandon the Informal Complaint. The preponderance of the evidence shows that Walker completed an affidavit outlining the pressure he received before he withdrew his complaint. He contacted his mother, explained the situation, filed another Informal Complaint regarding not receiving clean laundry and sought to have evidence of the excessive force incident preserved. In short, the steps taken by Walker contemporaneously with the withdrawal of the Informal Complaint corroborate his contention that the intimidation from Miller and Adams rendered the grievance process unavailable. Walker knew how to pursue a grievance. He began that process, but was thwarted in his effort pursue the grievance procedure outlined in OP. 866.1. In balance, I find that Walker has carried his burden of showing that the grievance process at Red Onion was unavailable to him to grieve the excessive force and bystander liability claims.

### III.  CONCLUSION

Walker has shown by a preponderance of the evidence that administrative remedies were not available to him in this case. The defendants' motion for summary judgment (Dkt. 82) is **DENIED.** This matter may proceed.

An appropriate order will follow.

    Enter:  March 25, 2022

    /s/ Robert S. Ballou

    Robert S. Ballou
    United States Magistrate Judge